**ATTORNEYS FOR FREEDOM LAW FIRM**
1003 Bishop Street, Suite 1260
Pauahi Tower
Honolulu, HI 96813
Phone: (808) 647-2423
Fax: (480) 857-0150
**Marc J. Victor - Bar. No. 011090**
**Jody L. Broaddus - Bar No. 011229**
**Caroline M. Elliot - Bar No. 011541**
Marc@AttorneysForFreedom.com
Jody@AttorneysForFreedom.com
Caroline@AttorneysForFreedom.com
*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAI‘I

| | |
|---|---|
| NATIONAL ASSOCIATION FOR GUN RIGHTS, | Civil No.  1:22-cv-404 |
| and | **COMPLAINT** |
| RONDELLE AYAU, | |
| and | |
| JEFFREY BRYANT, | |
| Plaintiffs, | |
| vs. | |
| HOLLY SHIKADA, in her official capacity as Attorney General for the State of Hawai‘i, | |
| Defendant. | |

Plaintiffs, by and through their attorneys, allege the facts and causes of action

against Defendant as set forth in this Complaint.

1

## I. PARTIES

1.      Plaintiff National Association for Gun Rights ("NAGR") is a nonprofit membership and donor-supported organization qualified as tax-exempt under 26 U.S.C. § 501(c)(4).  NAGR seeks to defend the right of all law-abiding individuals to keep and bear arms.  NAGR has members who reside within the State of Hawaiʻi (the "State"). NAGR represents the interests of its members who reside in the State.  Specifically, NAGR represents the interests of those who are affected by the State's prohibition of commonly used firearms and magazines.  In addition to their standing as citizens and taxpayers, those members' interests include their wish to exercise their constitutionally protected right to keep and bear arms without being subjected to criminal prosecution. But for the State's unlawful prohibition of commonly used arms and their reasonable fear of prosecution for violating these prohibitions, NAGR members would seek to acquire, keep, possess and/or transfer lawful arms for self-defense and other lawful purposes.  For purposes of this Complaint, the term "Plaintiffs" is meant to include NAGR in its capacity as a representative of its members.

2.      Plaintiffs Rondelle Ayau and Jeffrey Bryant are residents of Hawaiʻi and are law-abiding citizens of the United States.  But for the State's unlawful prohibition of commonly used arms and their reasonable fear of prosecution for violating these prohibitions, Plaintiffs Rondelle Ayau and Jeffrey Bryant would seek to acquire, keep, possess and/or transfer lawful arms for self-defense and other lawful purposes.

3.      Defendant Holly Shikada is the Attorney General of the State and is sued in her official capacity.  She is responsible for enforcing the State's customs, policies, practices

and laws related to the State Statute (as defined below).  Defendant Shikada may be
served at the Office of Attorney General located at 425 Queen St., Honolulu, Hawaiʻi
96813.

4.      Defendant is or will enforce the unconstitutional provisions of the Law against
Plaintiffs under color of state law within the meaning of 42 U.S.C. § 1983.

## II.  JURISDICTION AND VENUE

5.      The Court has original jurisdiction of this civil action under 28 U.S.C. § 1331,
because the action arises under the Constitution and laws of the United States.  The Court
also has jurisdiction under 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983 since this action
seeks to redress the deprivation, under color of the laws, ordinances, regulations, customs
and usages of the State, of rights, privileges or immunities secured by the United States.

6.      Plaintiffs' claims for declaratory and injunctive relief are authorized by
28 U.S.C. §§ 2201 and 2202, respectively, and their claim for attorneys' fees is
authorized by 42 U.S.C. § 1988.

7.      Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2), because a
substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this
district.

## III.  GENERAL ALLEGATIONS

8.      The Second Amendment to the United States Constitution declares that "the right
of the people to keep and bear arms shall not be infringed."  U.S. CONST. Amend. II; *see
also D.C. v. Heller*, 554 U.S. 570 (2008) ("*Heller*"); *McDonald v. City of Chicago*, 561

U.S. 742 (2010) ("*McDonald*"); and *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 2022 WL 2251305 (U.S. June 23, 2022) ("*Bruen*").

9.      The right to keep and bear arms recognized in the Second Amendment is made applicable to the states by the Fourteenth Amendment.  *McDonald, supra*.

10.     This action challenges the constitutionality of certain provisions of HAW. REV. STAT. § 134-8 (the "Statute").

11.     HAW. REV. STAT. § 134-1 defines the term "assault pistol."  The term "assault pistol" is not a technical term used in the firearms industry or community for firearms commonly available to civilians.  Instead, the term is a rhetorically charged political term meant to stir the emotions of the public against those persons who choose to exercise their constitutional right to possess certain semi-automatic firearms that are commonly owned by law-abiding American citizens for lawful purposes.  Plaintiffs refuse to adopt the State's politically charged rhetoric in this Complaint.  Therefore, for purposes of this Complaint, the term "Banned Firearm" shall have the same meaning as the term "assault pistol" in HAW. REV. STAT. § 134-1.

12.     HAW. REV. STAT. § 134-8(a) provides that the manufacture, possession, sale, barter, trade, gift, transfer, or acquisition of a Banned Firearm is prohibited.  A violation of this statute is a felony.

13.     Plaintiffs and/or their members desire to acquire, keep, bear and/or transfer Banned Firearms.

14.     The Second Amendment protects the right of law-abiding citizens to own weapons in common use by law-abiding citizens for lawful purposes.  *Heller*, *supra*, at 627.

15.     Across the nation, law-abiding citizens choose to possess firearms such as the Banned Firearms.  *Duncan v. Becerra ("Duncan IV)"*, 970 F.3d 1133, 1147 (9th Cir. 2020) [1] ("Commonality is determined largely by statistics."); *Ass 'n of N.J Rifle & Pistol Clubs, Inc. v. Att '.Y Gen*., 910 F.3d 106, 116 (3d Cir. 2018) (finding an "arm" is commonly owned because "[t]he record shows that millions . . . are owned"); *New York State Rifle & Pistol Ass 'n, Inc. v. Cuomo*, 804 F.3d 242, 255 (2d Cir. 2015) ("Even accepting the most conservative estimates cited by the parties and by amici, the assault weapons . . . at issue are 'in common use' as that term was used in *Heller*."); *Heller v. D.C. ("Heller II")*, 670 F.3d 1244, 1261 (D.C. Cir. 2011) ("We think it clear enough in the record that semi-automatic rifles . . . are indeed in 'common use.' ").

*Duncan v. Becerra ("Duncan III")*, 366 F. Supp. 3d 1131, 1145 (S.D. Cal. 2019). [2]

16.     As for AR-15 pistols, which are banned by the State, according to the Alcohol, Tobacco, Firearms, and Explosives Bureau, the intent of a "stabilizing brace" is to facilitate one handed firing of the AR-15 pistol.  Alcohol, Tobacco, Firearms, and Explosives Bureau, *Factoring Criteria for Firearms With Attached "Stabilizing Braces"*, 86 FR 30826-01 (June 10, 2021).  The ATFE estimates that three million such braces

---

[1] , *reh'g en banc granted, opinion vacated*, 988 F.3d 1209 (9th Cir. 2021), and *on reh'g en banc sub nom. Duncan v. Bonta*, 19 F.4th 1087 (9th Cir. 2021), *cert. granted, judgment vacated*, 142 S. Ct. 2895 (2022)

[2] *aff'd*, 970 F.3d 1133 (9th Cir. 2020), *reh'g en banc granted, opinion vacated*, 988 F.3d 1209 (9th Cir. 2021), and on *reh'g en banc sub nom. Duncan v. Bonta*, 19 F.4th 1087 (9th Cir. 2021), *cert. granted, judgment vacated*, 142 S. Ct. 2895 (2022), and *rev'd and remanded sub nom. Duncan v. Bonta*, 19 F.4th 1087 (9th Cir. 2021), and *cert. granted, judgment vacated*, 142 S. Ct. 2895 (2022)

have been sold since 2013.  Thus, at least three million AR-15 pistols or similar firearms are in existence.  This meets the "commonly held" standard.  *See Caetano v. Massachusetts*, 577 U.S. 411, 411—412 (2016) (per curiam) (concluding that stun guns were "widely owned" across the country based on evidence that "hundreds of thousands" had been sold to private citizens).

17.     Law-abiding citizens own and use for lawful purposes firearms such as the Banned Firearms.  Therefore, the Statute's prohibition on the acquisition, possession, sale, or other transfer of the Banned Firearms Plaintiffs and/or their members violates the Second Amendment.

18.     Haw. Rev. Stat. § 134-8(c) prohibits the manufacture, possession, sale, barter, trade, gift, transfer, or acquisition of detachable ammunition magazines with a capacity in excess of ten rounds which are designed for or capable of use with a pistol ("Banned Magazine").

19.     Magazines are indisputably "arms" protected by the Second Amendment, as the right to keep and bear arms necessarily includes the right to keep and bear components such as ammunition and magazines that are necessary for the firearm to operate.  *See United States v. Miller*, 307 U.S. 174, 180 (1939) (citing seventeenth century commentary recognizing that "[t]he possession of arms also implied the possession of ammunition"); *Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014) ("[W]ithout bullets, the right to bear arms would be meaningless").

20.     The magazines the State has banned unquestionably satisfy the "common use" test.  *Duncan III*, 366 F. Supp. 3d at 1143-45; *Duncan IV*, 970 F.3d at 1146-47.

21.    In *Kolbe v. Hogan*, 849 F.3d 114 (4th Cir. 2017), *abrogated by Bruen*, *supra*,

Judge Traxler (whose dissenting opinion almost certainly accurately states the law post

*Bruen*) stated:

> The record also shows unequivocally that magazines with a capacity of
> greater than 10 rounds are commonly kept by American citizens, as there are
> more than 75 million such magazines owned by them in the United States.
> These magazines are so common that they are standard on many firearms:
> On a nationwide basis most pistols are manufactured with magazines
> holding ten to 17 rounds.  Even more than 20 years ago, fully 18 percent of
> all firearms owned by civilians were equipped with magazines holding more
> than ten rounds."

*Id*., 849 F.3d at 154, Traxler, J. dissenting (internal citations and quotation marks
omitted).

22.    Magazines capable of holding more than 10 rounds of ammunition are commonly

owned by millions and millions of Americans for all manner of lawful purposes,

including self-defense, sporting, and hunting.  They come standard with many of the most

popular handguns and long guns on the market, and Americans own roughly 115 million

of them, *Duncan IV*, 970 F.3d at 1142, accounting for "approximately half of all privately

owned magazines in the United States," *Duncan v. Bonta*, 19 F.4th 1087, 1097 (9th Cir.

2021), *cert. granted, judgment vacated*, 142 S. Ct. 2895 (2022).

23.    Of particular import to this action, the most popular handgun in America, the

Glock 17 pistol, comes standard with a 17-round magazine.  *See Duncan III*, 366

F.Supp.3d at 1145.  Thus, the Statute makes it a crime to possess the magazine that

comes standard with the most popular handgun in America.

24.    There can be no serious dispute that magazines capable of holding more than 10

rounds are bearable arms that satisfy the common use test and thus are presumptively

protected by the Second Amendment.  Law-abiding citizens commonly own magazines such as the Banned Magazines for lawful purposes.  The Statute's prohibition on the acquisition, possession, sale, or other transfer of the Banned Magazines by Plaintiffs and/or their members violates the Second Amendment.

25.     The Second Amendment's plain text covers the Banned Firearms and the Banned Magazines.  It therefore falls to the Defendant to justify its regulation as consistent with historical tradition rooted in the Founding.  This it cannot possibly do so, because *Bruen* has already established that there is no tradition of banning commonly possessed arms, such as the Banned Firearms and the Banned Magazines.

26.     In the post-*Bruen* decision of *Rocky Mountain Gun Owners v. The Town of Superior*, Case No. 22-cv-1685 (July 22, 2022), the court entered an order in which it restrained enforcement of certain provisions of a Town of Superior, Colorado ordinance that banned semiautomatic weapons and magazine with a capacity greater than ten rounds.  The court held there was a strong likelihood that the plaintiffs in that case would prevail on the merits of their constitutional challenge to the ordinance provisions.  The restrained ordinance is similar to the ordinance provisions challenged in this action.

27.     There is an actual and present controversy between the parties.  The Law infringes on Plaintiffs' right to keep and bear arms under the Second Amendment by generally prohibiting the possession of arms that are commonly possessed by millions of Americans for lawful purposes.  Defendant denies these contentions.  Plaintiffs desire a judicial declaration that the Law sections identified above, facially and/or as applied to them, violate their constitutional rights.  Plaintiffs should not be forced to choose

between risking criminal prosecution and exercising their constitutional rights.  This is true even if certain provisions of the Law provide affirmative defenses to criminal prosecution.  The risk of criminal prosecution on account of exercising a constitutionally protected right unlawfully chills the exercise of that right and thus violates the Constitution even if the criminal defendant ultimately prevails.

28.     Plaintiffs are or will be injured by Defendant's enforcement of the Law sections identified above insofar as those provisions violate Plaintiffs' rights under the Second Amendment by precluding the acquisition, possession, transfer and use of arms that are "typically possessed by law-abiding citizens for lawful purposes" nationwide.  If not enjoined by this Court, Defendant will enforce the Law in derogation of Plaintiffs' constitutional rights.  Plaintiffs have no plain, speedy, and adequate remedy at law. Damages are indeterminate or unascertainable and, in any event, would not fully redress any harm suffered by Plaintiffs because they are unable to engage in constitutionally protected activity due to Defendant's present or contemplated enforcement of these provisions.

### IV. FIRST CLAIM FOR RELIEF
### Right to Keep and Bear Arms
### U.S. Const., amends. II and XIV

29.     Paragraphs 1 through 27 are realleged and incorporated by reference.

30.     The Law bans firearms and firearm magazines that are "typically possessed by law-abiding citizens for lawful purposes" nationwide.  The Law, therefore, generally prohibits residents of the State, including Plaintiffs, from acquiring, keeping, possessing,

and/or transferring arms protected by the Second Amendment.  There are significant penalties for violations of the Law.

31.    These restrictions infringe on the right of the people of the State, including Plaintiffs, to keep and bear arms as guaranteed by the Second Amendment and made applicable to the states and its political subdivisions by the Fourteenth Amendment.

32.    The Law's prohibitions extend into Plaintiffs' homes, where Second Amendment protections are at their zenith.

33.    Defendant cannot satisfy its burden of justifying these restrictions on the Second Amendment right of the People, including Plaintiffs, to bear, acquire, keep, possess, transfer, and use arms that are in common use by law-abiding adults throughout the United States for the core right of self-defense in the home and other lawful purposes.

## V.  PRAYER FOR RELIEF

Plaintiffs pray that the Court:

34.    Enter a declaratory judgment pursuant to 28 U.S.C. § 2201 that the Law sections identified herein are unconstitutional on their face or as applied to the extent their prohibitions apply to law-abiding adults seeking to acquire, use, transfer, or possess arms that are in common use by the American public for lawful purposes;

35.    Enter preliminary and permanent injunctive relief enjoining Defendant and its officers, agents, and employees from enforcing the unconstitutional Code sections identified above;

36.    Award remedies available under 42 U.S.C. § 1983 and all reasonable attorneys' fees, costs, and expenses under 42 U.S.C. § 1988, or any other applicable law; and

37.     Grant any such other and further relief as the Court may deem proper.

RESPECTFULLY SUBMITTED this 6th day of September, 2022.

ATTORNEYS FOR FREEDOM LAW FIRM

*/s/ Marc J. Victor*
Marc J. Victor, Esq.
Jody L. Broaddus, Esq.
Caroline M. Elliot, Esq.
*Attorneys for Plaintiffs*

Sebastian D. Torres*
Lewis Brisbois Bisgaard & Smith LLP
250 East Fifth Street, Suite 2000,
Cincinnati, Ohio, 45202
Telephone: (513) 808-9911
Facsimile: (513)-808-9912
Sebastian.Torres@lewisbrisbois.com
*Admission Pro Hac Vice Pending*

Barry K. Arrington*
Arrington Law Firm
3801 East Florida Avenue, Suite 830
Denver, Colorado 80210
(303) 205-7870
barry@arringtonpc.com
*Admission Pro Hac Vice Pending*

Plaintiffs' address:
National Association for Gun Rights
2300 West Eisenhower Boulevard
Loveland, Colorado 80537

Jeffrey Bryant
1198 Milia Street,
Kalaheo, Hawai'i, 96741

//

Rondelle Ayau
2270 Haku Hale Street,
Kalaheo, Hawaiʻi 96741