## **TABLE OF CONTENTS**

BACKGROUND ....................................................................................................... 2

STANDARD ............................................................................................................... 6

    I.      Article III Standing............................................................................... 7

    II.     Article III Ripeness ............................................................................. 8

ARGUMENT ............................................................................................................ 11

    I.      Plaintiffs' Claims Are Not Ripe and They Lack an Injury-
          in-Fact for Article III Standing.......................................................... 12

          A.     Plaintiffs have not alleged or established a "concrete
                 plan" to violate the provisions of HRS § 134-8 that
                 they challenge ........................................................................ 12

          B.     Plaintiffs have not alleged or established the
                 existence of a specific warning or threat to initiate
                 proceedings against them under HRS § 134-8 ........................ 15

          C.     Plaintiffs have not alleged or established a history of
                 past prosecution or enforcement under HRS § 134-8
                 sufficient to confer standing or ripeness ................................. 17

    II.     Plaintiffs Fail To Establish Redressability for Article III
          Standing As to Their Challenge to HRS § 134-8(a) ........................... 18

CONCLUSION ....................................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alaska Right to Life Pol. Action Comm. v. Feldman*,
  504 F.3d 840 (9th Cir. 2007).................................................. 9, 10, 11, 17

*Ass'n of Am. R.R. v. Cal. Off. of Spill Prevention & Response*,
  113 F. Supp. 3d 1052 (E.D. Cal. 2015)....................................... passim

*Bishop Paiute Tribe v. Inyo Cnty.*,
  863 F.3d 1144 (9th Cir. 2017)................................................................8

*Borja v. Nago*,
  Civ. No. 20-00433 JAO-RT, 2021 WL 4005990
  (D. Haw. Sept. 2, 2021)............................................................ 6, 7, 18

*Brown v. Shoe*,
  703 F. App'x 665 (10th Cir. 2017).......................................................20

*Casey v. Lewis*,
  4 F.3d 1516, 1519 (9th Cir. 1993).........................................................6

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ...........................................................................7

*Daogaru v. Lynch*,
  No. 1:16-CV-922-CAP, 2016 WL 9053352 (N.D. Ga. July 27, 2016) ..............20

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
  546 F.3d 981 (9th Cir. 2008)................................................................7

*Kimelman v. Garland*,
  No. CV 21-675 (TJK), 2022 WL 621401 (D.D.C. Mar. 3, 2022) ......................20

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) .........................................................................15

*Novak v. United States*,
  795 F.3d 1012 (9th Cir. 2015)............................................. 2, 8, 19, 21

*Rincon Band of Mission Indians v. San Diego Cnty.*,
  495 F.2d 1 (9th Cir. 1974)..................................................................17

*Sacks v. Off. of Foreign Assets Control,*
    466 F.3d 764 (9th Cir. 2006) ................................................ 9, 10, 11, 18

*San Diego Cnty. Gun Rts. Comm. v. Reno,*
    98 F.3d 1121 (9th Cir. 1996) ........................................................ passim

*Simon v. E. Ky. Welfare Rts. Org.,*
    426 U.S. 26 (1976) ...................................................................... 8, 20

*Stoianoff v. State of Mont.,*
    695 F.2d 1214 (9th Cir. 1983) ....................................................... 2, 16

*Temple v. Abercrombie,*
    903 F. Supp. 2d 1024 (D. Haw. 2012) ....................................... 1, 6, 12

*Thomas v. Anchorage Equal Rts. Comm'n,*
    220 F.3d 1134 (9th Cir. 2000) .................................................... passim

*Unified Data Servs., LLC v. Fed. Trade Comm'n,*
    39 F.4th 1200 (9th Cir. 2022) ...................................................... 14, 15

*Wolfson v. Brammer,*
    616 F.3d 1045 (9th Cir. 2010) ............................................................ 10

*Zentmyer v. United States,*
    No. 3:20-cv-02240-JAH-NLS, 2022 WL 959806
    (S.D. Cal. Mar. 30, 2022) ............................................................ passim

**Statutes**

18 U.S.C. § 922(g) ........................................................................ 12, 19

HRS § 134-1 ...................................................................................... 3, 14

HRS § 134-4(e) ....................................................................................... 3

HRS § 134-7 ..................................................................................... 12, 19

HRS § 134-7(b) ....................................................................................... 19

HRS § 134-7(c) ....................................................................................... 19

HRS § 134-8 ....................................................................................... 1, 18

HRS § 134-8(c) ..................................................................................................4

HRS § 134-8(d) ..................................................................................................4

## <u>MEMORANDUM IN SUPPORT OF MOTION</u>

Plaintiffs NATIONAL ASSOCIATION FOR GUN RIGHTS ("NAGR"),

RONDELLE AYAU, and JEFFREY BRYANT (collectively, "Plaintiffs"), bring

this pre-enforcement challenge to the constitutionality of Hawaii's restrictions on

semiautomatic firearms with certain accessories and configurations—statutorily

defined as "assault pistols"—and certain large-capacity magazines.  *See* Hawaiʻi

Revised Statutes ("HRS") § 134-8.  Plaintiffs plan to file a motion for a

preliminary injunction, *see* ECF No. 13 at PageID 55, but there are two major

jurisdictional defects with Plaintiffs' Complaint that preclude consideration of the

merits:  Plaintiffs' failure to establish (1) standing and (2) ripeness under Article

III.  *See Temple v. Abercrombie*, 903 F. Supp. 2d 1024, 1030 (D. Haw. 2012)

("The court must first determine whether it has subject-matter jurisdiction.").

Article III "limits the jurisdiction of federal courts to 'cases' and

'controversies[,]'" and the Ninth Circuit has "repeatedly admonished . . . that the

mere existence of a statute, which may or may not ever be applied to plaintiffs, is

not sufficient to create a case or controversy within the meaning of Article III."

*San Diego Cnty. Gun Rts. Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996)

(internal quotation marks, citation, and brackets omitted).  Rather, "a plaintiff must

demonstrate a genuine threat that the allegedly unconstitutional law is about to be

enforced against him."  *Stoianoff v. State of Mont.*, 695 F.2d 1214, 1223 (9th Cir.

1983).  Tested against the Ninth Circuit's standard for pre-enforcement challenges to criminal statutes, it is clear that the Complaint fails to allege facts establishing "a *genuine* threat of *imminent* prosecution," and fails to demonstrate an injury that is "actual or imminent" and "concrete and particularized," as required.  *San Diego Cnty. Gun Rts.*, 98 F.3d at 1126 (emphases in original) (internal quotation marks omitted).  As a result, Plaintiffs fail to establish either an injury-in-fact for standing purposes or ripeness under Article III.

Plaintiffs also fail to establish redressability, another basis for dismissal on Article III standing grounds.  Absent any clear allegation that Plaintiffs are permitted to own or possess a firearm under federal and state law, one cannot fairly conclude that the relief Plaintiffs seek would redress their alleged injury.  On the record Plaintiffs have developed, redressability is far too speculative to confer standing.  *See Novak v. United States*, 795 F.3d 1012, 1019 (9th Cir. 2015).

Because Plaintiffs have established neither standing nor ripeness, dismissal is warranted.

## **BACKGROUND**

Plaintiffs bring a pre-enforcement challenge to certain portions of HRS § 134-8.  ECF No. 1 ("Complaint") at ¶ 10.  First, Plaintiffs challenge HRS § 134-8(a)'s prohibition on the "manufacture, possession, sale, barter, trade, gift, transfer,

or acquisition of . . . assault pistols[.]"[1]  Plaintiffs allege that "[t]he term 'assault

pistol' . . . is a rhetorically charged political term meant to stir the emotions of the

public[,]" Complaint at ¶ 11, but the term is defined in HRS § 134-1 as follows:

> "Assault pistol" means a semiautomatic pistol that accepts a
> detachable magazine and has two or more of the following
> characteristics:
>
> (1) An ammunition magazine that attaches to the pistol outside of the
> pistol grip;
> (2) A threaded barrel capable of accepting a barrel extender, flash
> suppressor, forward hand grip, or silencer;
> (3) A shroud that is attached to or partially or completely encircles the
> barrel and permits the shooter to hold the firearm with the second
> hand without being burned;
> (4) A manufactured weight of fifty ounces or more when the pistol is
> unloaded;
> (5) A centerfire pistol with an overall length of twelve inches or more;
> or
> (6) It is a semiautomatic version of an automatic firearm;
>
> but does not include a firearm with a barrel sixteen or more inches in
> length, an antique pistol as defined in this section, or a curio or relic as

---

[1] HRS § 134-8(a)'s prohibition is subject to HRS § 134-4(e), which provides:

> After July 1, 1992, no person shall bring or cause to be brought into
> the State an assault pistol.  No assault pistol may be sold or transferred
> on or after July 1, 1992, to anyone within the State other than to a
> dealer licensed under section 134-32 or the chief of police of any
> county except that any person who obtains title by bequest or intestate
> succession to an assault pistol registered within the State shall, within
> ninety days, render the weapon permanently inoperable, sell or
> transfer the weapon to a licensed dealer or the chief of police of any
> county, or remove the weapon from the State.

No allegations regarding HRS § 134-4(e) appear in the Complaint.

3

those terms are used in 18 United States Code section 921(a)(13) or 27 Code of Federal Regulations section 478.11.

Violation of HRS § 134-8(a) is a class C felony.  *See* HRS § 134-8(d).

Second, Plaintiffs challenge HRS § 134-8(c)'s prohibition on "[t]he manufacture, possession, sale, barter, trade, gift, transfer, or acquisition of detachable ammunition magazines with a capacity in excess of ten rounds which are designed for or capable of use with a pistol[.]"[2]  Violation of HRS § 134-8(c) is a "misdemeanor except when a detachable magazine prohibited under this section is possessed while inserted into a pistol in which case the person shall be guilty of a class C felony."  HRS § 134-8(d).

Plaintiff NAGR is a "membership and donor-supported organization" that "seeks to defend the right of all law-abiding individuals to keep and bear arms."  Complaint at ¶ 1.  Plaintiff NAGR alleges that it "represents the interests of its members who reside in the State [of Hawaiʻi,]" and "[b]ut for the State's unlawful prohibition of commonly used arms and their reasonable fear of prosecution for violating these prohibitions, NAGR members would seek to acquire, keep, possess and/or transfer lawful arms [sic] for self-defense and other

---

[2] The prohibition does not apply "to magazines originally designed to accept more than ten rounds of ammunition which have been modified to accept no more than ten rounds and which are not capable of being readily restored to a capacity of more than ten rounds."  HRS § 134-8(c).

lawful purposes." *Id.* Plaintiff NAGR appears in this lawsuit "in its capacity as a representative of its members." *Id.*

Plaintiffs Rondelle Ayau and Jeffrey Bryant are Hawaiʻi residents and "law-abiding citizens of the United States." *Id.* at ¶ 2. They allege that "[b]ut for the State's unlawful prohibition of commonly used arms and their reasonable fear of prosecution for violating these prohibitions, [they] would seek to acquire, keep, possess and/or transfer lawful arms [sic] for self-defense and other lawful purposes." *Id.*

The Complaint includes one claim for relief against the Attorney General asserting that the portions of HRS § 134-8 regarding assault pistols and certain large-capacity magazines "infringe on the right of the people of the State, including Plaintiffs, to keep and bear arms as guaranteed by the Second Amendment and made applicable to the states and its political subdivisions by the Fourteenth Amendment." *Id.* at ¶ 31. Among other things, Plaintiffs ask that the Court:

> 34. Enter a declaratory judgment pursuant to 28 U.S.C. § 2201 that the Law sections identified herein are unconstitutional on their face or as applied to the extent their prohibitions apply to law-abiding adults seeking to acquire, use, transfer, or possess arms that are in common use by the American public for lawful purposes;
> 35. Enter preliminary and permanent injunctive relief enjoining Defendant and its officers, agents, and employees from enforcing the unconstitutional Code sections identified above[.]

*Id.* at ¶¶ 34-35.

## STANDARD

Article III "limits the jurisdiction of federal courts to 'cases' and 'controversies.'" *San Diego Cnty. Gun Rts.*, 98 F.3d at 1126. "No case or controversy exists if a plaintiff lacks standing or if a case is not ripe for adjudication[.]" *Temple*, 903 F. Supp. 2d at 1030. Standing and ripeness are "threshold" matters that must be established for a court to exercise subject-matter jurisdiction. *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000); *Borja v. Nago*, Civ. No. 20-00433 JAO-RT, 2021 WL 4005990, at *3 (D. Haw. Sept. 2, 2021).

"[I]t is plaintiff's burden to establish subject matter jurisdiction." *Zentmyer v. United States*, No. 3:20-cv-02240-JAH-NLS, 2022 WL 959806, at *1 (S.D. Cal. Mar. 30, 2022), and "[f]ederal courts are presumed to lack jurisdiction, unless the contrary appears affirmatively from the record," *San Diego Cnty. Gun Rts.*, 98 F.3d at 1126 (quoting *Casey v. Lewis*, 4 F.3d 1516, 1519 (9th Cir. 1993)) (internal quotation marks omitted). "Under [FRCP] 12(b)(1), a district court must dismiss a complaint if it lacks subject matter jurisdiction to hear the claims alleged in the complaint." *Borja*, 2021 WL 4005990, at *3; *see also Zentmyer*, 2022 WL 959806, at *1 ("Dismissal for lack of subject matter jurisdiction is appropriate if the complaint, considered in its entirety, on its face fails to allege facts sufficient to

6

establish subject matter jurisdiction." (quoting *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 984-85 (9th Cir. 2008))).

## I.     Article III Standing

To establish Article III standing, "a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Borja*, 2021 WL 4005990, at *3 (internal quotation marks and citation omitted). "At the pleading stage of a case, the plaintiff must clearly allege facts demonstrating each element" required for standing. *Id.* (internal quotation marks, citation, and alteration omitted).

The injury-in-fact prong of the standing inquiry requires that a plaintiff demonstrate an injury "to a legally protected interest that is both 'concrete and particularized' and 'actual or imminent,' as opposed to 'conjectural' or 'hypothetical.'" *San Diego Cnty. Gun Rts.*, 98 F.3d at 1126 (some internal quotation marks omitted). "Allegations of possible future injury are insufficient"; if a plaintiff is relying on a threatened injury, "the 'threatened injury must be *certainly impending* to constitute injury in fact.'" *Borja*, 2021 WL 4005990, at *4 (emphasis in original) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). Additionally, where "plaintiffs seek declaratory and injunctive relief only,

there is a further requirement that they show a very significant possibility of future harm[.]" *San Diego Cnty. Gun Rts.*, 98 F.3d at 1126.

The redressability prong of the standing analysis "requires that it be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Novak*, 795 F.3d at 1019 (internal quotation marks and citation omitted). "Although plaintiffs need not demonstrate that there is a guarantee that their injuries will be redressed by a favorable decision . . . they do need to show that there would be a change in a legal status as a consequence of a favorable decision[.]" *Id.* (internal quotation marks, brackets, and citations omitted). Absent redressability, "exercise of its power by a federal court would be gratuitous and thus inconsistent with the Art. III limitation." *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 38 (1976).

## II.   Article III Ripeness

A plaintiff also bears the burden of establishing that his or her claims are ripe. "Ripeness is an Article III doctrine designed to ensure that courts adjudicate live cases or controversies and do not issue advisory opinions or declare rights in hypothetical cases." *Bishop Paiute Tribe v. Inyo Cnty.*, 863 F.3d 1144, 1153 (9th Cir. 2017) (internal quotation marks, citation, and brackets omitted); *see also Thomas*, 220 F.3d at 1138 (ripeness is "designed to prevent the courts, through

8

avoidance of premature adjudication, from entangling themselves in abstract disagreements" (internal quotation marks and citation omitted)).

Although "an individual need not await prosecution under a law or regulation before challenging it," to bring a pre-enforcement challenge, the Ninth Circuit requires "a genuine threat of imminent prosecution and not merely an imaginary or speculative fear of prosecution" to establish ripeness. *Sacks v. Off. of Foreign Assets Control*, 466 F.3d 764, 772-73 (9th Cir. 2006) (internal quotation marks and citations omitted). Under Ninth Circuit law, in considering whether a plaintiff's pre-enforcement challenge is constitutionally ripe, courts must consider:

> (1) whether the plaintiffs have articulated a concrete plan to violate the law in question, (2) whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and (3) the history of past prosecution or enforcement under the challenged statute.

*Alaska Right to Life Pol. Action Comm. v. Feldman*, 504 F.3d 840, 849 (9th Cir. 2007). "A plaintiff must establish all three elements in its favor in order to survive a motion to dismiss on ripeness grounds." *Ass'n of Am. R.R. v. Cal. Off. of Spill Prevention & Response*, 113 F. Supp. 3d 1052, 1058 (E.D. Cal. 2015) (citing *Sacks*, 466 F.3d at 773).

"[N]either the mere existence of a proscriptive statute nor a generalized threat of prosecution satisfies the 'case or controversy' requirement." *Thomas*, 220 F.3d at 1139. "[T]he Ninth Circuit has routinely rejected arguments claiming that

the mere existence of a statute creates an injury." *Zentmyer*, 2022 WL 959806, at *3.

"The constitutional component of the ripeness inquiry . . . in many cases . . . coincides squarely with standing's injury in fact prong." *Thomas*, 220 F.3d at 1138; *see also Feldman*, 504 F.3d at 849 n.9 ("The constitutional component of ripeness often overlaps with the injury-in-fact prong of Article III standing."). "Whether framed as an issue of standing or ripeness, the inquiry is largely the same: whether the issues presented are definite and concrete, not hypothetical or abstract." *Wolfson v. Brammer*, 616 F.3d 1045, 1058 (9th Cir. 2010) (internal quotation marks and citation omitted); *see also Sacks*, 466 F.3d at 773 ("The requirement that a fear of prosecution be fairly certain to confer standing on the plaintiff is informed by the same considerations as the doctrine of ripeness. . . . Therefore, we employ the same test to determine if a plaintiff has established standing based on a fear of prosecution that we use to determine if a case or controversy is sufficiently ripe[,]" *i.e.*, "whether the plaintiffs have articulated a 'concrete plan' to violate the law in question, whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and the history of past prosecution or enforcement under the challenged statute.").

## **ARGUMENT**

Although "an individual need not await prosecution under a law or regulation before challenging it," *Sacks*, 466 F.3d at 772, the Ninth Circuit is specific about what a plaintiff must show to sustain a pre-enforcement challenge. Here, despite seeking extraordinary relief on a pre-enforcement basis—an injunction and declaratory judgment prohibiting the State of Hawai'i from enforcing a criminal statute—Plaintiffs fail to make the necessary showing. They fail to allege or establish: (1) a concrete plan to violate the law in question; (2) the communication of a specific warning or threat to initiate proceedings; and (3) a history of past prosecution or enforcement under the challenge statute. *See Feldman*, 504 F.3d at 849. Each is required under established Ninth Circuit precedent to bring a pre-enforcement challenge to a state criminal statute in federal court. *See Spill Prevention*, 113 F. Supp. 3d at 1058. The "mere possibility of criminal sanctions" is not enough. *San Diego Cnty. Gun Rts.*, 98 F.3d at 1126 (internal quotation marks and citation omitted). Yet even the most generous reading of Plaintiffs' Complaint establishes only "the mere existence of a statute, which may or may not ever be applied to plaintiffs," rather than a "*genuine* threat of *imminent* prosecution." *Id.* at 1126 (emphases in original) (internal quotation marks, citation, and brackets omitted). Plaintiffs have therefore failed to establish

11

either an injury-in-fact for standing purposes or ripeness, and their Complaint must be dismissed.  *See Temple*, 903 F. Supp. 2d at 1030.

Plaintiffs also fail to establish redressability, another requirement for Article III standing, as to their claim regarding HRS § 134-8(a).  Plaintiffs allege that they would like to "acquire, keep, bear and/or transfer" firearms "[b]anned" by HRS § 134-8(a), Complaint at ¶ 13, but nowhere allege that they are permitted to own or possess a firearm under federal and state law, *see* 18 U.S.C. § 922(g); HRS § 134-7.  Without any such allegation, redressability is speculative, at best, and insufficient in any event to confer standing.

## I.      Plaintiffs' Claims Are Not Ripe and They Lack an Injury-in-Fact for Article III Standing.

### A.      Plaintiffs have not alleged or established a "concrete plan" to violate the provisions of HRS § 134-8 that they challenge.

*First*, Plaintiffs fail to allege a concrete plan to violate HRS § 134-8.  A "concrete plan requires more than a hypothetical intent to violate the law."  *Spill Prevention*, 113 F. Supp. 3d at 1058.  In other words, "[a] general intent to violate a statute at some unknown date in the future does not rise to the level of an articulated, concrete plan."  *Thomas*, 220 F.3d at 1139.

Here, Plaintiffs fail to present this Court with any "plan" whatsoever.  *See Zentmyer*, 2022 WL 959806, at *4 ("Plaintiff alleges no such plan in the operative complaint. . . . [A]s the Government notes, Plaintiff 'has alleged no plan (concrete

12

or otherwise) to obtain a firearm' and 'has not alleged any genuine or imminent

threat of prosecution if he moved to Arizona and purchased a firearm.'").

Plaintiffs, in other words, fail to allege *any* intent to violate HRS § 134-8—whether

"hypothetical" or "concrete."  All Plaintiffs allege on the topic is:

- "But for the State's unlawful prohibition of commonly used arms and their reasonable fear of prosecution for violating these prohibitions, NAGR members would seek to acquire, keep, possess and/or transfer lawful arms [sic] for self-defense and other lawful purposes."  Complaint at ¶ 1.

- "But for the State's unlawful prohibition of commonly used arms and their reasonable fear of prosecution for violating these prohibitions, Plaintiffs Rondelle Ayau and Jeffrey Bryant would seek to acquire, keep, possess and/or transfer lawful arms [sic] for self-defense and other lawful purposes."  *Id.* at ¶ 2.

- "Plaintiffs and/or their members desire to acquire, keep, bear and/or transfer Banned Firearms."  *Id.* at ¶ 13.

Nowhere do Plaintiffs allege or establish that they actually intend to violate HRS §

134-8.  At most, Plaintiffs allege a general "desire' to engage in conduct prohibited

by HRS § 134-8, but that fails to demonstrate "the high degree of immediacy that

is necessary under these circumstances."  *San Diego Cnty. Gun Rts.*, 98 F.3d at

1129.

The Ninth Circuit has already made clear that assertions of a "wish and

inten[tion] to engage in activities prohibited by" a firearms regulation are too

vague to establish a "concrete plan."  *Id.* at 1127 (internal quotation marks

omitted); *see also Spill Prevention*, 113 F. Supp. 3d at 1058 ("The mere assertion

of a desire to engage in a prohibited activity, particularly when the acts necessary to make plaintiffs' injury—prosecution under the challenged statute—materialize are almost entirely within plaintiffs' own control is too indefinite to constitute a 'concrete plan.'" (citation and some internal quotation marks omitted)). [3] To invoke this Court's jurisdiction, a plaintiff must do more than allege general "wishes," "desires," or "some day intentions." *See San Diego Cnty. Gun Rts.*, 98 F.3d at 1127 ("As the Supreme Court has observed, such 'some day' intentions—without any description of concrete plans, or indeed even any specification of *when*

---

[3] Even if a "desire" to engage in prohibited conduct could potentially be sufficient to demonstrate a "concrete plan," Plaintiffs' allegation of their "desire" is far too vague. *See* Complaint at ¶ 13 ("Plaintiffs and/or their members desire to acquire, keep, bear and/or transfer Banned Firearms."). To start, Plaintiffs fail to even specify which of the following they "desire" to do— "acquire, keep, bear *and/or* transfer"—indicative of their lack of any "concrete plan." Plaintiffs also provide no detail as to what firearms with what characteristics they would "acquire, keep, bear and/or transfer," so that Defendant and this Court can, among other things, evaluate whether Plaintiffs' proposed conduct would even violate the statute. *See supra* at 2-4 (discussing HRS § 134-8 and the definition of "assault pistol" in HRS § 134-1); *see also Unified Data Servs., LLC v. Fed. Trade Comm'n*, 39 F.4th 1200, 1210-11 (9th Cir. 2022) ("[T]he complaint utterly lacks, let alone states 'with some degree of concrete detail,' an allegation that Plaintiffs 'intend to violate' the Rule as interpreted by the 2016 letter. . . . The complaint fails to state to what extent Plaintiffs currently use soundboard technology, to what extent they use it in connection with charitable activity, and whether they plan to use it in the future. They have not, in short, provided any information about the 'when, to whom, where, or under what circumstances' they would use soundboard technology but for the challenged policies."). The Complaint is also devoid of any allegations regarding a "desire" (even assuming that could be sufficient) as to large-capacity magazines barred by HRS § 134-8(c), despite the fact that Plaintiffs have challenged that provision.

the some day will be—do not support a finding of the 'actual or imminent' injury

that our cases require." (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564

(1992)) (brackets and internal quotation marks omitted)).  Plaintiffs' alleged

"desires" and vague "but for" allegations fall far short of demonstrating a

"concrete plan"—and that is fatal to their Complaint.  *See, e.g., Spill Prevention*,

113 F. Supp. 3d at 1058.

**B.      Plaintiffs have not alleged or established the existence of a specific warning or threat to initiate proceedings against them under HRS § 134-8.**

*Second*, Plaintiffs fail to allege or establish that they have been subject to

any specific warning or threat to initiate criminal proceedings against them under

HRS § 134-8.  Because pre-enforcement review is limited to "circumstances that

render the threatened enforcement sufficiently imminent[,]" *Spill Prevention*, 113

F. Supp. 3d at 1059, "a general threat of prosecution is not enough" to confer

standing or ripeness, *Unified Data Servs.*, 39 F.4th at 1210; *San Diego Cnty. Gun

Rts.*, 98 F.3d at 1127.[4]  "[T]here must be a *specific* warning or threat of

---

[4] The Ninth Circuit has provided the following examples of general threats of
prosecution insufficient to invoke federal jurisdiction:

> *See, e.g., Poe v. Ullman,* 367 U.S. 497, 501, 81 S.Ct. 1752, 1754–55,
> 6 L.Ed.2d 989 (1961) (plurality opinion) (mere allegation that state
> attorney intended to prosecute any offense against Connecticut law,
> including use of and advice concerning contraceptives held
> insufficient to confer standing); *Western Mining Council,* 643 F.2d at
> 626 (Secretary's statement that "plaintiffs cannot dig in the ground"

enforcement *directed at Plaintiffs*."  *Spill Prevention*, 113 F. Supp. 3d at 1059 (emphases added); *Stoianoff*, 695 F.2d at 1223 ("[A] plaintiff must demonstrate a genuine threat that the allegedly unconstitutional law is about to be enforced against him.").

Here, Plaintiffs "do not identify even a general threat made against them." *San Diego Cnty. Gun Rts.*, 98 F.3d at 1127; *see also Zentmyer*, 2022 WL 959806, at *4 ("Plaintiff's pleading in this action does not contain any clear allegation that prosecuting authorities have communicated a specific warning or threat to initiate proceedings.  Though plaintiffs are required to show a 'genuine threat of imminent prosecution', Plaintiff's instant complaint fails to make any relevant allegations regarding threats of enforcement.").  The Complaint alleges that "Defendant is or will enforce the unconstitutional provisions of the Law against Plaintiffs under color of state law within the meaning of 42 U.S.C. § 1983," Complaint at ¶ 4, but (1) there are no allegations demonstrating that Plaintiffs are *presently* subject to any enforcement or prosecution under HRS § 134-8 (as already noted, Plaintiffs here bring a *pre-enforcement* challenge to the statute), and (2) the bare assertion

---

not a sufficiently specific threat of prosecution); *Rincon Band*, 495 F.2d at 4 (sheriff's statement to tribal members that county ordinance prohibiting gambling would be enforced within his jurisdiction insufficient).

*San Diego Cnty. Gun Rts.*, 98 F.3d at 1127.

that Defendant "will" enforce the statute against them does not meet Plaintiffs' burden of showing a "specific warning or threat to initiate proceedings[.]" *See Feldman*, 504 F.3d at 849.[5]

Based on their allegations, Plaintiffs have "established at most a possibility of their eventual prosecution under [HRS § 134-8], which is clearly insufficient to establish a 'case or controversy.'" *San Diego Cnty. Gun Rts.*, 98 F.3d at 1128. Article III standing and ripeness require more than "[t]he mere possibility of criminal sanctions applying," *Zentmyer*, 2022 WL 959806, at *4 (internal quotation marks and citation omitted), yet that is all Plaintiffs have offered here.

### C. Plaintiffs have not alleged or established a history of past prosecution or enforcement under HRS § 134-8 sufficient to confer standing or ripeness.

*Third*, Plaintiffs have failed to allege or establish a history of past prosecution or enforcement under HRS § 134-8. Plaintiffs simply fail to make any allegations relevant to this factor. As a result, "it can hardly be said on this record that there [i]s a history of prosecution under [HRS § 134-8]." *Rincon Band of Mission Indians v. San Diego Cnty.*, 495 F.2d 1, 5 (9th Cir. 1974). Plaintiffs have "decline[d] to explain or discuss the past prosecution or enforcement of [HRS §

---

[5] Nor does their similarly bare allegation that "[i]f not enjoined by this Court, Defendant will enforce the Law in derogation of Plaintiffs' constitutional rights." Complaint at ¶ 28.

134-8], though it is [their] burden to do so[.]" *Zentmyer*, 2022 WL 959806, at *5. This provides an additional, independent reason why dismissal is required.

In sum, Plaintiffs' Complaint fails to satisfy any of the three essential requirements for a pre-enforcement challenge in this Court: no concrete plan, no specific warning or threat to initiate proceedings directed at Plaintiffs, and no allegations establishing a history of past prosecution or enforcement under the statute. To demonstrate the existence of a justiciable claim, "[a] plaintiff must establish all three elements in its favor[.]" *Spill Prevention*, 113 F. Supp. 3d at 1058 (citing *Sacks*, 466 F.3d at 773). Thus, "[w]hether viewed through the lens of standing or ripeness," *Sacks*, 466 F.3d at 773, Plaintiffs' challenge to HRS § 134-8 is not justiciable.

## II. Plaintiffs Fail To Establish Redressability for Article III Standing As to Their Challenge to HRS § 134-8(a).

The redressability element of Article III standing also has not been satisfied with respect to Plaintiffs' challenge to HRS § 134-8(a), providing an additional ground for dismissal of that claim. *See Borja*, 2021 WL 4005990, at *3 ("To establish standing to sue in federal court, a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." (internal quotation marks and citation omitted)). Here, the allegations of the Complaint provide no basis to conclude that Plaintiffs' alleged injury as to HRS § 134-8(a) is

18

likely to be redressed by a favorable judicial decision because Plaintiffs fail to clearly allege that they are permitted to own or possess a firearm under federal and state law. *See* 18 U.S.C. § 922(g); HRS § 134-7. If, for example, Plaintiffs have been convicted of "a felony, or any crime of violence, or an illegal sale of any drug," they are barred from owning, possessing, or controlling "any firearm or ammunition therefor" under Hawai'i law. HRS § 134-7(b). The same may result if Plaintiffs "[are] or ha[ve] been under treatment or counseling for addiction to, abuse of, or dependence upon any dangerous, harmful, or detrimental drug, intoxicating compound as defined in section 712-1240, or intoxicating liquor[.]" HRS § 134-7(c).

　　In their Complaint, all Plaintiffs allege is that they are "law-abiding," Complaint at ¶ 2, with no clear allegation that they are permitted to own or possess a firearm under federal and state law. As a result, it is not at all clear on this record that Plaintiffs' alleged injury—*i.e.*, their inability to "acquire, keep, bear and/or transfer" firearms "[b]anned" by HRS § 134-8(a), Complaint at ¶ 13—would be remedied if they prevailed in this lawsuit. If Plaintiffs are barred from owning or possessing a firearm under either federal or state law, the relief sought in this case would make no difference—there would be no "change in a legal status as a consequence of a favorable decision[,]" *Novak*, 795 F.3d at 1019 (internal quotation marks and citation omitted), and the exercise of this Court's power

19

"would be gratuitous and thus inconsistent with the Art. III limitation[,]" *Simon*,

426 U.S. at 38; *cf. Brown v. Shoe*, 703 F. App'x 665, 667 (10th Cir. 2017) ("[The

plaintiff's] injury would not be redressed by a favorable judicial decision: Even if

he prevails here, he could not lawfully purchase a firearm because . . . he is a

convicted felon and . . . federal law prohibits convicted felons from possessing

firearms. . . . Thus, even if [the plaintiff] prevails here, he could not lawfully

purchase a firearm.  In these circumstances, [the plaintiff's] alleged injury, denial

of the right to purchase a firearm, is not redressable even if the court were to rule

in his favor."); *Kimelman v. Garland*, No. CV 21-675 (TJK), 2022 WL 621401, at

*3 (D.D.C. Mar. 3, 2022) ("[B]ecause New York law would still prohibit [the

plaintiff] from purchasing or possessing firearms no matter how the Court resolves

his claims, he has not shown that a favorable decision would redress his inability to

do so."); *Daogaru v. Lynch*, No. 1:16-CV-922-CAP, 2016 WL 9053352, at *2

(N.D. Ga. July 27, 2016) (plaintiff's alleged injury to his constitutional right to

bear arms under federal law not redressable where state law "independently bars

him from possessing a firearm").  Because Plaintiffs' Complaint fails to show that

it is "likely, as opposed to merely speculative, that [Plaintiffs' alleged] injury

[under HRS § 134-8(a)] will be redressed by a favorable decision," *Novak*, 795

F.3d at 1019, Plaintiffs lack standing and their claim as to HRS § 134-8(a) must be dismissed.[6]

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendant respectfully requests that this Court dismiss the Complaint for lack of jurisdiction because Plaintiffs have failed to establish Article III standing or ripeness.

DATED:  Honolulu, Hawaiʻi, October 28, 2022.

*/s/ Kalikoʻonālani D. Fernandes*
JOHN H. PRICE
KIMBERLY T. GUIDRY
KALIKOʻONĀLANI D. FERNANDES
NICHOLAS M. MCLEAN
DAVID D. DAY

Attorneys for Defendant HOLLY
SHIKADA, in her official capacity as
Attorney General for the State of Hawaiʻi

---

[6] On all claims, Plaintiff NAGR is no better situated for standing purposes than the individual Plaintiffs.  NAGR appears in this lawsuit "in its capacity as a representative of its members," Complaint at ¶ 1, and has "standing to sue on behalf of [its] members only if . . . [its] members would otherwise have standing to sue in their own right[,]" *San Diego Cnty. Gun Rts.*, 98 F.3d at 1130.  Because NAGR relies on the same feeble allegations in the Complaint, it has not established that any of its members have standing, and therefore fails to demonstrate its own standing. *See, e.g.*, *id.*