Arrington Law Firm
Barry K. Arrington*
4195 Wadsworth Boulevard
Wheat Ridge, Colorado 80033
Phone:  (303) 205-7870
Email:  barry@arringtonpc.com
*Pro Hac Vice*

Gatlin Voelker
Sebastian D. Torres
50 E Rivercenter Boulevard #1275
Covington, Kentucky 41011
Phone: (859) 781-9100
STorres@GatlinVoelker.com

ATTORNEYS FOR FREEDOM LAW FIRM
1003 Bishop Street, Suite 1260
Pauahi Tower
Honolulu, HI 96813
Phone: (808) 647-2423
Fax: (480) 857-0150
Marc J. Victor - Bar. No. 011090
Jody L. Broaddus - Bar No. 011229
Caroline M. Elliot - Bar No. 011541
Marc@AttorneysForFreedom.com
Jody@AttorneysForFreedom.com
Caroline@AttorneysForFreedom.com
*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| NATIONAL ASSOCIATION FOR GUN RIGHTS | Civil No. 22-cv-00404-DKW-RT |
| and | |
| RONDELLE AYAU | **FIRST AMENDED COMPLAINT** |
| and | |
| JEFFREY BRYANT | |

1

|  |  |
|---|---|
| Plaintiffs, | ) |
| vs. | ) |
|  | ) |
| HOLLY SHIKADA, in her official capacity as | ) |
| Attorney General for the State of Hawaiʻi | ) |
|  | ) |
| Defendant. | ) |

Pursuant to Fed.R.Civ.P. 15(a)(1)(B), a party may amend its complaint once as a matter of course within 21 days of service of a motion under Rule 12(b). Defendant filed a motion under Rule 12(b) in response to Plaintiffs' Complaint on October 28, 2022. Accordingly, Plaintiffs, by and through their attorneys, allege the facts and causes of action against Defendant as set forth in this First Amended Complaint.

## I. PARTIES

1. Plaintiff National Association for Gun Rights ("NAGR") is a nonprofit membership and donor-supported organization qualified as tax-exempt under 26 U.S.C. § 501(c)(4). NAGR has members who reside in the State of Hawai'i (the "State").

2. Plaintiffs Rondelle Ayau and Jeffrey Bryant are residents of The State.

3. Defendant Holly Shikada is the Attorney General of the State and is sued in her official capacity. She is responsible for enforcing the State's customs, policies, practices and laws related to the Statutes (as defined below).

4. Defendant is or will enforce the unconstitutional provisions of the Statutes against Plaintiffs under color of state law within the meaning of 42 U.S.C. § 1983.

## II. JURISDICTION AND VENUE

5. The Court has original jurisdiction of this civil action under 28 U.S.C. § 1331, because the action arises under the Constitution and laws of the United States. The Court also has

jurisdiction under 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983 since this action seeks to redress the deprivation, under color of the laws, ordinances, regulations, customs and usages of the State, of rights, privileges or immunities secured by the United States.

6. Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, respectively, and their claim for attorneys' fees is authorized by 42 U.S.C. § 1988.

7. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

### III. THE CHALLENGED STATUTES

8. HAW. REV. STAT. § 134-1 states in relevant part:

> 'Assault pistol' means a semiautomatic pistol that accepts a detachable magazine and has two or more of the following characteristics:
>
> (1) An ammunition magazine that attaches to the pistol outside of the pistol grip;
>
> (2) A threaded barrel capable of accepting a barrel extender, flash suppressor, forward hand grip, or silencer;
>
> (3) A shroud that is attached to or partially or completely encircles the barrel and permits the shooter to hold the firearm with the second hand without being burned;
>
> (4) A manufactured weight of fifty ounces or more when the pistol is unloaded;
>
> (5) A centerfire pistol with an overall length of twelve inches or more; or
>
> (6) It is a semiautomatic version of an automatic firearm;
>
> but does not include a firearm with a barrel sixteen or more inches in length, an antique pistol as defined in this section, or a curio or relic as those terms are used in 18 United States Code section 921(a)(13) or 27 Code of Federal Regulations section 478.11.

9. HAW. REV. STAT. § 134-8 states in relevant part:

> (a) The manufacture, possession, sale, barter, trade, gift, transfer, or acquisition of any of the following is prohibited: assault pistols, except as provided by section 134-4(e) . . .
>
> (c) The manufacture, possession, sale, barter, trade, gift, transfer, or acquisition of detachable ammunition magazines with a capacity in excess of ten rounds which are designed for or capable of use with a pistol is prohibited. This subsection shall not apply to magazines originally designed to accept more than ten rounds of ammunition which have been modified to accept no more than ten rounds and which are not capable of being readily restored to a capacity of more than ten rounds.
>
> (d) Any person violating subsection (a) or (b) shall be guilty of a class C felony and shall be imprisoned for a term of five years without probation. Any person violating subsection (c) shall be guilty of a misdemeanor except when a detachable magazine prohibited under this section is possessed while inserted into a pistol in which case the person shall be guilty of a class C felony.

10. HAW. REV. STAT. § 134-4(e) states:

> After July 1, 1992, no person shall bring or cause to be brought into the State an assault pistol. No assault pistol may be sold or transferred on or after July 1, 1992, to anyone within the State other than to a dealer licensed under section 134-32 or the chief of police of any county except that any person who obtains title by bequest or intestate succession to an assault pistol registered within the State shall, within ninety days, render the weapon permanently inoperable, sell or transfer the weapon to a licensed dealer or the chief of police of any county, or remove the weapon from the State.

11. The term "assault pistol" as defined in HAW. REV. STAT. § 134-1 is not a technical term used in the firearms industry or community for firearms commonly available to civilians. Instead, the term is a rhetorically charged political term meant to stir the emotions of the public against those persons who choose to exercise their constitutional right to possess certain semi-automatic firearms that are commonly owned by law-abiding American citizens for lawful purposes. Plaintiffs refuse to adopt the State's politically charged rhetoric in this Complaint.

Therefore, for purposes of this Complaint, the term "Banned Firearm" shall have the same meaning as the term "assault pistol" in HAW. REV. STAT. § 134-1.

12. For purpose of this Complaint, the term "Banned Magazine" shall mean a magazine the manufacture, possession, sale, barter, trade, gift, transfer, or acquisition of which is prohibited by HAW. REV. STAT. § 134-8(c).

13. This action challenges the constitutionality of the portion of HAW. REV. STAT. § 134-8 quoted above and HAW. REV. STAT. § 134-4(e), which shall be referred to herein collectively as the "Statutes."

## IV. PLAINTIFFS' STANDING

14. The unique standing considerations in the constitutional context tilt dramatically toward a finding of standing when a plaintiff brings a pre-enforcement challenge. *Tingley v. Ferguson*, 47 F.4th 1055, 1066 (9th Cir. 2022) (internal quotations and citations omitted). *Tingley* was a First Amendment case, but that difference does not matter, because in *Bruen*, *infra*, the Supreme Court held that Second Amendment rights should be protected in the same way First Amendment rights are protected. *Id.*, 142 S. Ct. at 2130. *See also Ezell v. City of Chicago*, 651 F.3d 684, 997 (7th Cir. 2011) (court equated Second Amendment standard with First Amendment standard); and *Duncan v. Becerra*, 265 F. Supp. 3d 1106, 1113 (S.D. Cal. 2017), aff'd, 742 F. App'x 218 (9th Cir. 2018) (upholding pre-enforcement challenge to magazine ban).

15. The Supreme Court has dispensed with rigid standing requirements in constitutional cases and has instead endorsed pre-enforcement challenges. *Tingley*, 47 F.4th at 1067 (internal quotations and citations omitted).

16.     A chilling of the exercise of constitutional right is, itself, a constitutionally sufficient injury. *Id*. (internal quotations and citations omitted).

17.     To establish pre-enforcement standing, a plaintiff must allege an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder. *Id*. (internal quotations and citations omitted).

18.     A three-factor inquiry helps determine whether a threat of enforcement is genuine enough to confer an Article III injury: (1) whether the plaintiff has a concrete plan to violate the law, (2) whether the enforcement authorities have communicated a specific warning or threat to initiate proceedings, and (3) whether there is a history of past prosecution or enforcement. *Id*. (internal quotations and citations omitted).

19.     A state's refusal to disavow enforcement of a statute against a plaintiff during litigation is "**strong evidence**" that the state intends to enforce the law and that a plaintiff faces a credible threat. *California Trucking Ass'n v. Bonta*, 996 F.3d 644, 653 (9th Cir. 2021), *cert. denied sub nom. California Trucking Ass'n, Inc. v. Bonta*, 142 S. Ct. 2903 (2022).

enforcement. *Id*. (emphasis added; internal quotations and citations omitted).

20.     The government's active enforcement of a statute against other persons who have engaged in the conduct plaintiffs wish to engage in demonstrates that the threat of prosecution is real. *Adult Video Ass'n v. Barr*, 960 F.2d 781, 785 (9th Cir. 1992), *as amended* (June 18, 1992), *cert. granted, judgment vacated sub nom. on other grounds Reno v. Adult Video Ass'n*, 509 U.S. 917, 113 S. Ct. 3028, 125 L. Ed. 2d 716 (1993).

21.     Plaintiffs Rondelle Ayau and Jeffrey Bryant are residents of the State. They are law abiding citizens and but for the prohibitions of the Statutes, they would be entitled lawfully to manufacture, possess, sell, barter, trade, gift, transfer, or acquire Banned Firearms and Banned Magazines.

22.     The Statutes have chilled Plaintiffs Rondelle Ayau and Jeffrey Bryant in the exercise of their constitutional rights to keep and bear arms. They currently desire to acquire, possess, sell and transfer Banned Firearms and Banned Magazines and would do so but for the prohibitions of the Statutes.

23.     The State is actively enforcing the Statutes. A person was charged with violation of the Statutes as recently as June 2022. The State has filed amicus briefs in several cases in which other states' firearms regulations have been challenged. For example, in 2019 the State filed an amicus brief in a case challenging California's firearms regulations similar to those in the Statutes. The State's Attorney General said he filed the amicus brief to support the State's existing laws banning magazines. These actions evince a clear intent by the State vigorously to enforce the Statutes.

24.     Plaintiffs Rondelle Ayau and Jeffrey Bryant have requested the State to disavow enforcement of the Statutes. The State has not disavowed enforcement of the Statutes in response to this request.

25.     NAGR seeks to defend the right of all law-abiding individuals to keep and bear arms. NAGR has members who reside within the State. NAGR represents the interests of its members who reside in the State. NAGR's members on whose behalf this action is brought are law abiding citizens and but for the prohibitions of the Statutes, they would be entitled lawfully to

manufacture, possess, sell, barter, trade, gift, transfer, or acquire Banned Firearms and Banned Magazines.

26. The Statutes have chilled NAGR's members on whose behalf this action is brought in the exercise of their constitutional rights to keep and bear arms. They currently desire to acquire, possess, sell and transfer Banned Firearms and Banned Magazines and would do so but for the prohibitions of the Statutes.

27. NAGR has requested the State to disavow enforcement of the Statutes. The State has not disavowed enforcement of the Statutes in response to this request.

### III. GENERAL ALLEGATIONS

28. The Second Amendment to the United States Constitution declares that "the right of the people to keep and bear arms shall not be infringed." U.S. CONST. Amend. II; *see also D.C. v. Heller*, 554 U.S. 570 (2008) ("*Heller*"); *McDonald v. City of Chicago*, 561 U.S. 742 (2010) ("*McDonald*"); and *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 2022 WL 2251305 (U.S. June 23, 2022) ("*Bruen*").

29. The right to keep and bear arms recognized in the Second Amendment is made applicable to the states by the Fourteenth Amendment. *McDonald, supra*.

30. The Second Amendment protects the right of law-abiding citizens to own weapons in common use by law-abiding citizens for lawful purposes. *Heller, supra*, at 627.

31. Across the nation, law-abiding citizens choose to possess firearms such as the Banned Firearms. *Duncan v. Becerra* ("*Duncan IV*)", 970 F.3d 1133, 1147 (9th Cir. 2020)[1]

---

[1] *reh'g en banc granted, opinion vacated*, 988 F.3d 1209 (9th Cir. 2021), *and on reh'g en banc sub nom. Duncan v. Bonta*, 19 F.4th 1087 (9th Cir. 2021), *cert. granted, judgment vacated*, 142 S. Ct. 2895 (2022)

("Commonality is determined largely by statistics."); *Ass 'n of N.J Rifle & Pistol Clubs, Inc. v. Att '.Y Gen*., 910 F.3d 106, 116 (3d Cir. 2018) (finding an "arm" is commonly owned because "[t]he record shows that millions . . . are owned"); *New York State Rifle & Pistol Ass 'n, Inc. v. Cuomo*, 804 F.3d 242, 255 (2d Cir. 2015) ("Even accepting the most conservative estimates cited by the parties and by amici, the assault weapons . . . at issue are 'in common use' as that term was used in Heller."); *Heller v. D.C*. ("*Heller II*"), 670 F.3d 1244, 1261 (D.C. Cir. 2011) ("We think it clear enough in the record that semi-automatic rifles . . . are indeed in 'common use.' "). *Duncan v. Becerra* ("*Duncan III*"), 366 F. Supp. 3d 1131, 1145 (S.D. Cal. 2019).[2]

32. As for AR-15 pistols, which are banned by the State, according to the Alcohol, Tobacco, Firearms, and Explosives Bureau, the intent of a "stabilizing brace" is to facilitate one handed firing of the AR-15 pistol. Alcohol, Tobacco, Firearms, and Explosives Bureau, Factoring Criteria for Firearms With Attached "Stabilizing Braces", 86 FR 30826-01 (June 10, 2021). The ATFE estimates that three million such braces have been sold since 2013. Thus, at least three million AR-15 pistols or similar firearms are in existence. This meets the "commonly held" standard. *See Caetano v. Massachusetts*, 577 U.S. 411, 411—412 (2016) (*per curiam*) (concluding that stun guns were "widely owned" across the country based on evidence that "hundreds of thousands" had been sold to private citizens).

33. Law-abiding citizens own and use for lawful purposes firearms such as the Banned Firearms. Therefore, the Statutes' prohibition on the acquisition, possession, sale, or other

---

[2] *aff'd*, 970 F.3d 1133 (9th Cir. 2020), *reh'g en banc granted, opinion vacated*, 988 F.3d 1209 (9th Cir. 2021), and *on reh'g en banc sub nom. Duncan v. Bonta*, 19 F.4th 1087 (9th Cir. 2021), *cert. granted, judgment vacated*, 142 S. Ct. 2895 (2022), and *rev'd and remanded sub nom. Duncan v. Bonta*, 19 F.4th 1087 (9th Cir. 2021), and *cert. granted, judgment vacated*, 142 S. Ct. 2895 (2022)

transfer of the Banned Firearms Plaintiffs and/or their members violates the Second Amendment.

34. Magazines are indisputably "arms" protected by the Second Amendment, as the right to keep and bear arms necessarily includes the right to keep and bear components such as ammunition and magazines that are necessary for the firearm to operate. *See United States v. Miller*, 307 U.S. 174, 180 (1939) (citing seventeenth century commentary recognizing that "[t]he possession of arms also implied the possession of ammunition"); *Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014) ("[W]ithout bullets, the right to bear arms would be meaningless").

35. The magazines the State has banned unquestionably satisfy the "common use" test. *Duncan III*, 366 F. Supp. 3d at 1143-45; *Duncan IV*, 970 F.3d at 1146-47.

36. In *Kolbe v. Hogan*, 849 F.3d 114 (4th Cir. 2017), *abrogated by Bruen, supra*, Judge Traxler (whose dissenting opinion almost certainly accurately states the law post *Bruen*) stated:

> The record also shows unequivocally that magazines with a capacity of greater than 10 rounds are commonly kept by American citizens, as there are more than 75 million such magazines owned by them in the United States. These magazines are so common that they are standard on many firearms: On a nationwide basis most pistols are manufactured with magazines holding ten to 17 rounds. Even more than 20 years ago, fully 18 percent of all firearms owned by civilians were equipped with magazines holding more than ten rounds."

*Id.*, 849 F.3d at 154, Traxler, J. dissenting (internal citations and quotation marks omitted).

37. Magazines capable of holding more than 10 rounds of ammunition are commonly owned by millions and millions of Americans for all manner of lawful purposes, including self-defense, sporting, and hunting. They come standard with many of the most popular handguns and long guns on the market, and Americans own roughly 115 million of them, *Duncan IV*, 970

F.3d at 1142, accounting for "approximately half of all privately owned magazines in the United States," *Duncan v. Bonta*, 19 F.4th 1087, 1097 (9th Cir. 2021), *cert. granted, judgment vacated*, 142 S. Ct. 2895 (2022).

38. Of particular import to this action, the most popular handgun in America, the Glock 17 pistol, comes standard with a 17-round magazine. *See Duncan III*, 366 F.Supp.3d at 1145. Thus, the Statutes make it a crime to possess the magazine that comes standard with the most popular handgun in America.

39. There can be no serious dispute that magazines capable of holding more than 10 rounds are bearable arms that satisfy the common use test and thus are presumptively protected by the Second Amendment. Law-abiding citizens commonly own magazines such as the Banned Magazines for lawful purposes. The Statutes' prohibition on the acquisition, possession, sale, or other transfer of the Banned Magazines by Plaintiffs and/or their members violates the Second Amendment.

40. The Second Amendment's plain text covers the Banned Firearms and the Banned Magazines. It therefore falls to the Defendant to justify its regulation as consistent with historical tradition rooted in the Founding. This it cannot possibly do so, because *Bruen* has already established that there is no tradition of banning commonly possessed arms, such as the Banned Firearms and the Banned Magazines.

41. There is an actual and present controversy between the parties. The Statutes infringe on Plaintiffs' right to keep and bear arms under the Second Amendment by generally prohibiting the possession of arms that are commonly possessed by millions of Americans for lawful purposes. Defendant denies these contentions. Plaintiffs desire a judicial declaration that the

Statutes, facially and/or as applied to them, violate their constitutional rights. Plaintiffs should not be forced to choose between risking criminal prosecution and exercising their constitutional rights. The risk of criminal prosecution on account of exercising a constitutionally protected right unlawfully chills the exercise of that right and thus violates the Constitution even if the criminal defendant ultimately prevails.

42. Plaintiffs are or will be injured by Defendant's enforcement of the Statutes insofar as those provisions violate Plaintiffs' rights under the Second Amendment by precluding the acquisition, possession, transfer and use of arms that are "typically possessed by law-abiding citizens for lawful purposes" nationwide. If not enjoined by this Court, Defendant will enforce the Statutes in derogation of Plaintiffs' constitutional rights. Plaintiffs have no plain, speedy, and adequate remedy at law. Damages are indeterminate or unascertainable and, in any event, would not fully redress any harm suffered by Plaintiffs because they are unable to engage in constitutionally protected activity due to Defendant's present or contemplated enforcement of these provisions.

## IV. FIRST CLAIM FOR RELIEF
### Right to Keep and Bear Arms
### U.S. Const., amends. II and XIV

43. Paragraphs 1 through 42 are realleged and incorporated by reference.

44. The Statutes ban firearms and firearm magazines that are "typically possessed by law-abiding citizens for lawful purposes" nationwide. The Statutes, therefore, generally prohibits residents of the State, including Plaintiffs, from acquiring, keeping, possessing, and/or transferring arms protected by the Second Amendment. There are significant penalties for violations of the Statutes.

45. These restrictions infringe on the right of the people of the State, including Plaintiffs, to keep and bear arms as guaranteed by the Second Amendment and made applicable to the states and its political subdivisions by the Fourteenth Amendment.

46. The Statutes' prohibitions extend into Plaintiffs' homes, where Second Amendment protections are at their zenith.

47. Defendant cannot satisfy its burden of justifying these restrictions on the Second Amendment right of the People, including Plaintiffs, to bear, acquire, keep, possess, transfer, and use arms that are in common use by law-abiding adults throughout the United States for the core right of self-defense in the home and other lawful purposes.

## V. PRAYER FOR RELIEF

Plaintiffs pray that the Court:

48. Enter a declaratory judgment pursuant to 28 U.S.C. § 2201 that the Statutes are unconstitutional on their face or as applied to the extent their prohibitions apply to law-abiding adults seeking to acquire, use, transfer, or possess arms that are in common use by the American public for lawful purposes;

49. Enter preliminary and permanent injunctive relief enjoining Defendant and its officers, agents, and employees from enforcing the unconstitutional Statutes;

50. Award remedies available under 42 U.S.C. § 1983 and all reasonable attorneys' fees, costs, and expenses under 42 U.S.C. § 1988, or any other applicable law; and

51. Grant any such other and further relief as the Court may deem proper.

RESPECTFULLY SUBMITTED this 8th day of November 2022.

*/s/ Barry K. Arrington*
Barry K. Arrington

Arrington Law Firm
4195 Wadsworth Boulevard
Wheat Ridge, Colorado 80033
Phone:  (303) 205-7870
Email:  barry@arringtonpc.com
*Pro Hac Vice*

Gatlin Voelker
Sebastian D. Torres
50 E Rivercenter Boulevard #1275
Covington, Kentucky 41011
Phone: (859) 781-9100
STorres@GatlinVoelker.com

ATTORNEYS FOR FREEDOM LAW FIRM
1003 Bishop Street, Suite 1260
Pauahi Tower
Honolulu, HI 96813
Phone: (808) 647-2423
Fax: (480) 857-0150
Marc J. Victor - Bar. No. 011090
Jody L. Broaddus - Bar No. 011229
Caroline M. Elliot - Bar No. 011541
Marc@AttorneysForFreedom.com
Jody@AttorneysForFreedom.com
Caroline@AttorneysForFreedom.com
*Attorneys for Plaintiffs*

CERTIFICATE OF SERVICE

   I hereby certify that on November 8, 2022, a copy of foregoing was filed electronically. Notice of this filing will be sent by e-mail to all appearing parties by operation of the Court's electronic filing. Parties may access this filing through the Court's system.

*/s/ Barry K. Arrington*
Barry K. Arrington