The City and County recommended that this bill be limited to authorizing the seizure of license plates and allowing the impoundment of the uninsured vehicle by the County Police Department. The City's concern is that the police officer not be required to enter private property to confiscate the license plates.

Your Committee has accordingly amended the bill to provide for seizure of license plates when a police officer locates the vehicle, presumably on public streets.

Your Committee on Consumer Protection and Commerce is in accord with the intent and purpose of S.B. No. 2258, S.D. 1, as amended herein, and recommends that it pass Second Reading in the form attached hereto as S.B. No. 2258, S.D. 1, H.D. 1, and be placed on the calendar for Third Reading.

Signed by all members of the Committee except Representative Cachola.

**SCRep. 1261-92**   **Judiciary on S.B. No. 1843**

The purpose of this bill, as received, is to:

(1)   Define "assault firearm", "pistol grip", and "semi-automatic firearm";

(2)   Require registration of assault firearms lawfully possessed prior to November 4, 1992;

(3)   Restrict the importation of new assault firearms; and

(4)   Prohibit the manufacture, possession, sale, barter, trade, gift, transfer, or acquisition of detachable magazines.

Testimony in support of this measure was submitted by the Department of the Attorney General, the Department of the Prosecuting Attorney for the City and County of Honolulu as well as the Counties of Hawaii, Kauai, and Maui, the Police Department for the City and County of Honolulu as well as the Counties of Hawaii, Kauai, and Maui, the Department of Public Safety, the Department of Health, the Office of Youth Services, the Injury Prevention Advisory Committee, the Hawaii Chapter of the FBI National Academy Associates, the State of Hawaii Organization of Police Officers, the Hawaii Firearms Control Coalition, the Hawaii Medical Association, and other agencies, community organizations, and private citizens.

Testimony in opposition to this measure was submitted by the National Rifle Association, the Hawaii Federation of Sportsmen, the Hawaii Rifle Association, the Valley Isle Sport Shooters, the Maui Expedition, the Media Shooting Club, the Hawaii Chapter of the Safari Club International, and other clubs, organizations, and private citizens.

Testimony indicated that semi-automatic assault pistols are particularly dangerous because they are easily concealed, can fire in rapid succession for sustained periods, often have barrel shrouds or threaded barrels designed for silencers, and often accept large-capacity, detachable ammunition magazines. Your Committee finds that characteristics such as these make these types of weapons especially dangerous and that the Legislature may reasonably restrict the use, possession, sale, and transfer of such weapons.

Your Committee prefers to avoid specifying a list of firearms meeting the definition of assault pistol, so it has developed a list of objective physical characteristics typical of the firearms which represents a heightened risk of danger to our community because of their concealability and firepower while having little or no utility for sporting applications.

Each of the characteristics identified were chosen because they facilitate firing a large amount of ammunition in a short period of time while maintaining sufficient control of the firearm to permit a "spraying" effect. Your Committee wishes to clarify that firearms which are "a semiautomatic version of an automatic firearm" are of particular concern because a significant number of these firearms can be converted to fully automatic fire, even if only temporarily, with relative ease. Some of these firearms, such as the UZI pistol, may have been redesigned from a fully automatic carbine for semiautomatic operation, but are clearly "versions" of those weapons because they possess many, if not all, of the characteristics of their ancestors except their mode of operation.

This bill has been amended as follows:

(1)   By deleting all existing substantive provisions;

(2)   By inserting provisions defining "assault pistols" and "semiautomatic";

(3)   By restricting the lawful possession of assault pistols;

(4)   By prohibiting the manufacture, possession, sale, barter, trade, gift, transfer, or acquisition of certain detachable magazines; and

(5)   By inserting a provision directing the Chiefs of Police of the respective counties and the Attorney General to make reasonable efforts to publicize a list of firearms which the respective chiefs have determined meet the definition of "assault pistol", with the proviso that the respective Chiefs have no authority to adopt rules or regulations having the force of law.

# EXHIBIT "9"

Case 1:22-cv-00404-DKW-RT   Document 36-40   Filed 02/15/23   Page 2 of 2   PageID.1081

HOUSE JOURNAL - STANDING COMMITTEE REPORTS

1383

Your Committee on Judiciary is in accord with the intent and purpose of S.B. No. 1843, S.D. 2, as amended herein, and recommends that it pass Second Reading in the form attached hereto as S.B. No. 1843, S.D. 2, H.D. 1, and be placed on the calendar for Third Reading.

Signed by all members of the Committee except Representative Cachola.

SCRep. 1262-92    Judiciary on S.B. No. 3316

The purpose of this bill, as received, is to establish an expanded marine life conservation district (MLCD) in the Waikiki-Diamond Head area. The new MLCD would extend out to sea from the Diamond Head lighthouse in the east and the Ala Wai Channel in the west. The seaward boundary of the MLCD would be established by the straight line connecting the Diamond Head buoy with the point directly out from the Ala Wai Channel at which the depth of the ocean reaches 100 feet. Within the new MLCD there would exist zones A, B, and C, each zone in turn containing a subzone. These subzones would each have a southern boundary measured at a distance of 500 yards from the highwater mark or to the edge of the fringing reef, whichever is greater. Activities within each zone or subzone would be governed by laws or rules. The MLCD would be established by the rule-making authority of the Department of Land and Natural Resources (DLNR), prior to January 1, 1993.

Testimony in support of this measure was received from the Honolulu Department of Parks and Recreation, the Bishop Museum, the Waikiki Improvement Association, the Waikiki Beachcomber Hotel, Kawika Aina Corporation, Aikane Catamarans, and numerous individuals.

Testimony in support of the intent of this bill was received from the Department of Land and Natural Resources, TORCH, the Hawaii Council of Diving Clubs, the Hilton Hotels Corporation, and numerous individuals.

Testimony in opposition to this measure was received from the Hawaii Beachboy Service Association, Surf and Water Sports World, Ocean Innovators, Save Our Surf, Tropical Fish & Vegetable Center, West Diamond Head Community Association, Sierra Club, Uaukewai Diving, Salvage & Fishing, Robert Dunn and Associates, All Hawaiian Tropicals, and many private citizens.

Waikiki is a favorite water usage area for residents of Oahu. One popular reason that residents enjoy Waikiki's beach and ocean is to primarily view and relate to its beautiful fish. Presently, Oahu does not have enough sites where these activities can take place. The present Waikiki MLCD has been partially successful, and has resulted in a noticeable increase in the numbers of fishes, but more deep water habitat is needed to allow larger fish to find safe refuge. It is these larger fish which are most important to breeding populations. The present MLCD provides a safe habitat for young fish but there is no deep water haven to move to when they grow older. As soon as they move over the edge of the fringing reef into deeper water they become fair game. It is for the protection of these larger fish that the Waikiki MLCD was proposed to be expanded.

Reasons given by those testifying in support of this measure includes, that government management of this area:

(1)    Promotes the increase of marine life; and

(2)    Eliminates the safety hazard of mixed uses (fishing and swimming).

Reasons given by those testifying in opposition to this bill includes, that the bill:

(1)    Fails to account for the many uses of the area; and

(2)    Favors certain commercial activities over others.

Your Committee is appreciative of the tremendous public response generated by this bill's subject matter. Your Committee finds that all of the people who testified before it were sincere in their belief that the conservation and preservation of Waikiki's remaining resources is of primary concern to the people of this State. Where these parties diverge, however, is in the manner of managing these resources.

In consideration of all of the issues raised before this Committee, this bill is amended by deleting its substantive contents. This bill is also amended by inserting language mandating:

(1)    That there is established within the Office of State Planning a task force to develop a feasibility plan to expand the Waikiki MLCD. The task force shall consist of seventeen members, each member to be a representative from a different group, organization, or agency. Those to be represented are:

   (a)    the Department of Land and Natural Resources;

   (b)    the Harbor Patrol;

   (c)    the Hawaii Beachboy Service Association;

   (d)    the Waikiki Improvement Association;

   (e)    the Hawaii Hotel Association;

   (f)    Neighborhood Board Number 5;