FILED

SEP 28 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| VIRGINIA DUNCAN; et al.,<br><br>   Plaintiffs-Appellees,<br><br> v.<br><br>ROB BONTA, in his official capacity as Attorney General of the State of California,<br><br>   Defendant-Appellant. | No.   23-55805<br><br>D.C. No.<br>3:17-cv-01017-BEN-JLB<br>Southern District of California,<br>San Diego<br><br>ORDER |

Before: MURGUIA, Chief Judge, and THOMAS, GRABER, WARDLAW, PAEZ, BERZON, IKUTA, HURWITZ, R. NELSON, BUMATAY, and VANDYKE, Circuit Judges.[1]

The en banc panel has elected to accept this case as a comeback. *See* Ninth Cir. Gen. Order 3.6(b).[2]

---

[1] Judge Wardlaw was drawn to replace Judge Watford. *See* Ninth Cir. Gen. Order 5.1(b)(1).

[2] The Supreme Court has held that the governing statute leaves it to each Court of Appeals "to establish the procedure for exercise of the [en banc] power." *Western Pac. R.R. Corp. v. Western Pac. R.R. Co.*, 345 U.S. 247, 257 (1953). In this circuit, "matters arising after remand" are directed to the en banc court, which "will decide whether to keep the case or to refer it to the three judge panel." Ninth Cir. Gen. Order 3.6(b). Here, the en banc panel has exercised its discretion to keep the comeback appeal, as our rules contemplate. "[W]hen a case is heard or reheard en banc, the en banc panel assumes jurisdiction over the entire case, *see* 28 U.S.C. § 46(c) . . . ." *Summerlin v. Stewart*, 309 F.3d 1193, 1193 (9th Cir. 2002) (Mem.). General Order 6.4, moreover, provides that emergency motions in potential comeback cases are directed to the previous panel that heard the case which, in this case, is the en banc court. Ninth Cir. Gen. Order 6.4(a). At

Appellant Attorney General Rob Bonta has moved to stay the district court's permanent injunction except to the extent that California Penal Code Section 32310 prohibits possession of large-capacity magazines that were lawfully acquired and possessed prior to the district court's judgment. This emergency motion seeks relief on or before October 2, 2023, when the district court's stay of the injunction expires. In the event the court cannot resolve the motion by October 2, Appellant seeks a temporary administrative stay.

The motion for a temporary administrative stay is granted. The injunction issued by the district court is stayed through October 10, 2023. The stay does not apply to the district court's order enjoining Section 32310(c) and (d) for large-capacity magazines that were lawfully acquired before the district court's order.

Appellees are directed to file a response to the emergency motion on or before Saturday, September 30, 2023. Appellant may file a reply on or before Tuesday, October 3, 2023.

Judges Ikuta, R. Nelson, Bumatay, and VanDyke dissent from the granting of the administrative stay.

---

this time, therefore, Appellant's emergency motion is pending before the en banc panel. Although this case presents the unusual circumstances of a comeback en banc case combined with an emergency motion for a stay pending appeal, the procedures undertaken by this court have been fully consistent with our longstanding rules and practices and do not in any sense represent a departure from regular order.

*Duncan v. Bonta*, 23-55805

Hurwitz, Circuit Judge, concurring:

The only thing the Court does today is grant a *one-week* administrative stay that effectively extends the stay ordered by the district court, while we take up the State's emergency motion for a stay pending appeal. Despite the rhetoric from my dissenting colleagues, this temporary stay evinces no more disrespect for the Supreme Court or the Second Amendment than the district court's stay (issued by a judge who found the California statute unconstitutional in order to give the State sufficient time to seek a stay pending appeal).

I therefore concur in the order granting the stay.

*Duncan v. Bonta*, No. 23-55805
Bumatay, J., dissenting:

For over a decade, our court has improperly interest-balanced our way around the Second Amendment. The Supreme Court has had enough of it. *See N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. __, 142 S. Ct. 2111 (2022). In *Bruen*, the Supreme Court made clear that the Second Amendment must no longer be deemed a disfavored right.

With this clear direction from the Supreme Court, you might think that our court would return to regular order and handle this Second Amendment case like all others before our court. And in the normal course, emergency motions would be handled by a three-judge panel. But not here. Because this is a Second Amendment case, we now take the unprecedented step of taking an emergency motion as an en banc panel in the first instance. While our rules may leave room for such an unusual step, discretion and wisdom counsel against it. Indeed, to my knowledge, no en banc panel of this court has ever handled an emergency administrative stay motion as an initial matter. And the majority cites no precedent otherwise. So I'm left wondering why we rush to do something so unorthodox.

I thus respectfully dissent from the grant of the administrative stay. Such a decision should be left to the sound judgment of a three-judge panel.

*Duncan v. Bonta*, No. 23-55805
VanDyke, J., dissenting

I share Judge Bumatay's concerns about the irregularities created by this en banc panel's all-too-predictable haste to again rule against the Second Amendment. Apparently, even summary reversal by the Supreme Court has not tempered the majority's zeal to grab this case as a comeback, stay the district court's decision, and make sure they—not the original three-judge panel—get to decide the emergency motion (and ultimately, the eventual merits questions) in favor of the government. I think it is clear enough to everyone that a majority of this en banc panel will relinquish control of this case only when it is pried from its cold, dead fingers. And I think it is clear enough to everyone why.

There is a phenomenon that long has been recognized in abortion cases—sometimes called "abortion distortion"—that describes courts' willingness to jettison procedural norms or other normal rules of decision making when a case concerns abortion. As the Supreme Court recently observed in *Dobbs*, abortion cases have led to a distortion in legal doctrines ranging from severability to First Amendment doctrine. *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2275–76 (2022). And Justice Thomas has likewise decried the "troubling tendency 'to bend the rules when any effort to limit abortion, or even to speak in opposition to abortion, is at issue.'" *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2321 (2016) (Thomas, J., dissenting) (citation omitted); *see also June Med. Servs.*

*L.L.C. v. Russo*, 140 S. Ct. 2103, 2153 (2020) (Alito, J., dissenting) ("[T]he abortion right recognized in this Court's decisions is used like a bulldozer to flatten legal rules that stand in the way."); *Madsen v. Women's Health Ctr.*, 512 U.S. 753, 785 (1994) (Scalia, J. concurring in part and dissenting in part) ("The entire injunction in this case departs so far from the established course of our jurisprudence that in any other context it would have been regarded as a candidate for summary reversal. But the context here is abortion."). "Abortion exceptionalism" has too often "mean[t] the rules are different for abortion cases." Caroline Mala Corbin, *Abortion Distortions*, 71 WASH. & LEE L. REV. 1175, 1210 (2014). After *Dobbs*, "we can no longer engage in those abortion distortions." *SisterSong Women of Color Reprod. Just. Collective v. Governor of Georgia*, 40 F.4th 1320, 1328 (11th Cir. 2022). Or at least we shouldn't.

Cases involving the Second Amendment in our circuit have unfortunately suffered from a like phenomenon. And just as we should no longer distort our rules in abortion cases, we should no longer apply "different rules to different constitutional rights." *Whole Woman's Health*, 136 S. Ct. at 2321 (Thomas, J., dissenting). We should not give Second Amendment cases "special" treatment.

But the current irregularities highlighted by Judge Bumatay's dissent are not the only way this case continues to demonstrate our court's enduring bellicosity toward the Second Amendment. The irregularities in this case run much deeper—

2

indeed, all the way back to when this case was first called en banc. This en banc panel was born in illegitimacy, and this case should never have been taken en banc in the first place.

After the three-judge panel first issued its opinion in August 2020, one judge on our court requested Rule 5.4(b) notice in three cases (including this one) but then inadvertently missed the deadlines to timely call the cases en banc under our clear rules. That could happen to any judge. But rather than simply accepting the result dictated by our rules, or even deciding as an *entire* court to waive our rules, we went in a different direction. First, the decision was made by someone—not by the rules, or even the entire court—to allow the respective panels to waive the deadlines on behalf of the entire court. Then, the campaign started: earnest conversations were had, hearts were poured out, tears were shed, and pressure was applied to the panels with mace-like collegiality. And in the end, a discrete collection of judges—again, not the entire court—struck a "compromise," circumvented our own rules, and allowed the en banc call to move forward. But only in this one case. The agreement was made to call this case but drop the en banc calls in two other cases—*including a death penalty case*. Priorities.

A lot about this is deeply troubling. First and foremost, we have rules for a reason. We operate under them every day. They should apply equally and consistently, unless and until we change those rules in the normal course. There

3

is no exception for "cases that some of the judges on our court really, really care about." That would be capricious and erode external and internal confidence in our court. If we lack the temerity to codify a "Second Amendment exception" in our en banc rules, we should have refrained from employing it behind the double veil of "internal court matters" in which only some members of the court participated.

Second, because we have clear, settled, court-wide rules, a discrete group of panel and off-panel judges interested in en banc rehearing shouldn't have been permitted to circumvent those rules on their own. We have a process for suspending the rules, upon a vote of the entire court. *See* 9th Cir. General Order 12.11. But no judge tendered a Rule 12.11 request. Instead, this was handled off the books by a handful of judges. Which makes it even worse. This off-books approach allowed the would-be en banc advocates to pressure the panels to be "collegial," and simultaneously concealed these conversations from the rest of the court. It also delimited the scope of the question to whether we would "bend the rules" and allow some exceptions in three specific cases, which prevented the entire court from considering the weightier question of whether, as an institution, we should be suspending our settled rules for "particularly important cases." Such agreement—however procured—does not somehow confer legitimacy.

In sum, not only is our court treating this case "special" now, but the process

that brought this case en banc in the first place was illegitimate from the start. This demonstrates and perpetuates this court's anti-Second Amendment posture, rewards the weaponization of (one-sided) collegiality, and damages the internal and external integrity of the court. How are we to uphold the rule of law, and reassure the public we are doing so, when we disregard our own rules and make questionable decisions like this behind closed doors?

    The story of the Second Amendment in this circuit has been a consistent tale of our court versus the Supreme Court and the Constitution. That tale continues today, and will continue as long as a number of my colleagues retain the discretion to twist the law and procedure to reach their desired conclusion. As uncomfortable as it is to keep pointing that out, it is important the public keeps being reminded of that fact.